1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                         FOR THE DISTRICT OF ARIZONA
8
9   Richard and Jean Wilson, et al.,          )    No. 04-1149-PHX-EHC
                                              )
10          Plaintiffs,                        )    **ORDER**
                                              )
11  vs.                                        )
                                              )
12                                             )
    Lucia M. Turner, Deputy Regional          )
13  Forester; Nora B. Rasure, Coconino        )
    National Forest Supervisor; and the United)
14  States Forest Service,                     )
                                              )
15          Defendants.                        )
                                              )
16  _____)
17

18          Pending before the Court are Plaintiffs' Motion for Summary Judgment (Dkt. 24) and

19  Defendants' Cross-Motion for Summary Judgment (Dkt. 32).  The motions are fully briefed

20  and ready for consideration.

21  **Background – The Peaks Segment of the Arizona Trail**

22          The Arizona Trail is a long-distance trail traversing Arizona from its Mexico border

23  to Utah, spanning approximately 790 miles in length.  The Arizona Trail is not complete.

24  The United States Forest Service has proposed constructing a trail in northern Arizona near

25  the San Francisco Peaks.  The newly constructed trail will connect the existing segments of

26  the Arizona Trail.  This lawsuit concerns this proposed "Peaks Segment" of the Trail running

27  through the Coconino National Forest, from Sandy Seep to Kelly Tank, close to the San

28

Francisco Peaks[1]; the proposed segment is referred as Alternative C1.  If completed, it will connect the northern and southern portions of the already existing trail.  Numerous public agencies, citizen organizations, and individuals have been involved in the creation of the proposed trail.  The trail, 24 inches wide and 15.4 miles in length, will allow for non-motorized use only; its users primarily will be hikers, equestrians, and mountain bicyclists. To create the trail, no snags, pine or fir trees greater than nine inches in diameter will be removed; no oak trees greater than five inches in diameter will be removed.

The Forest Service considered four main alternative routes for the Peaks Segment of the Trail.  Alternative C1 begins at Sandy Seep[2] and travels northwest along existing Forest Service roads to the Sunset Trailhead.  In total, the Peaks Segment will consist of roughly thirty miles of trail, about half of which already exist.  In January 2004, after soliciting public input and consulting with 14 Native American Tribes[3], government agencies, and other interest groups, the Forest Service issued an Environmental Assessment (EA) selecting Alternative C1 as the best option. The 48-page document listed the purpose and need of the project, the alternatives, and the environmental consequences for each alternative.  On January 14, 2004, the Defendant Nora B. Rasure, Forest Supervisor of the Coconino National Forest, issued an eleven-page Decision Notice that explained the selection of Alternative C1 for the Peaks Segment and issued a Finding of No Significant Impact (FONSI) for that trail.  The Decision Notice was subject to appeal (administrative review) pursuant to 36 C.F.R. § 215.1 *et seq*.

On March 5, 2004, Plaintiffs Richard and Jean Wilson, joined by other private land-owners, filed a 34-page appeal with the Forest Service under the Department of Agriculture. Plaintiffs asserted that the EA was inadequate and the more in-depth Environmental Impact

---

[1]Much of the existing trail, but not the Peaks segment, is already open to the public and in use. The parties are not aware of any litigation concerning other segments of the Trail.

[2]Located few miles northeast of Flagstaff on U.S. Highway 89.

[3]No Native American tribes have joined in this action.

1   Survey (EIS) should be taken.  On March 30, 2004, Plaintiffs (and their representatives) met

2   with Defendant Nora Rasure to try to informally resolve their appeal; Plaintiffs insisted on the

3   completion of an EIS or the issuance of a new Decision Notice with Alternative D as the

4   proposed trail because Alternative D was less invasive.  The meeting did not resolve the

5   appeal.  Three weeks later, Defendant Lucia M. Turner, Deputy Regional Forester for the

6   Southwestern Region, issued a nine-page opinion affirming the Decision Notice and FONSI.

7            The Forest Service found that Alternative C1 provides safe and high quality recreation

8   activities without harming the environment. The Forest Service found that Alternative C1

9   complies with the Biological Opinion issued by the United States Fish and Wildlife Service

10  by minimizing the adverse effects of the Peaks Segment on the Mexican Spotted Owl (MSO),

11  a Threatened Species, and adequately maintaining MSO habitat. For example, in those

12  portions of Alternative C1 which pass through MSO Protected Activity Centers (PACs), no

13  camping will be permitted within one half mile of the Trail.  Furthermore, no permits to pass

14  through PACs will be granted to groups larger than twelve during the MSO breeding season.

15  Alternative C1 also passes through two Post-Fledgling Family Areas (PFAs) of the Northern

16  Goshawk, a Sensitive Species in Region Three of the Forest Service.  The Forest Service

17  found, however, that one of these PFAs is not currently known to be occupied by the Northern

18  Goshawk; nevertheless Alternative C1 never passes nearer than one half mile from any known

19  nest stands in the other PFA.  The Forest service found that, while Alternative C1 could affect

20  the habitat of other wildlife, such as deer, elk, and turkey, population vitality of these species

21  is not a special concern.  Finally, the Forest Service, after over one hundred contacts with

22  Native American Tribes who hold the San Francisco peaks in reverence, found that

23  Alternative C1 best mitigated tribal concerns.

24           The Decision Notice rejected Alternative A, which followed a somewhat similar path,

25  as less safe because it incorporated an existing trail which is also used by motorcycles.

26  Alternative D followed a similar path but was rejected because it crossed many roads and was

27  not as scenic.  Alternative B, the No Action alternative, was rejected as unnecessary.

28

1    Plaintiffs are all residents of Arizona. Some of them own property within a few miles

2    of where Alternative C1 would pass. They filed this lawsuit on June 3, 2004, alleging that the

3    Forest Service's Decision Notice and FONSI approving Alternative C1 violate the National

4    Environmental Policy Act (NEPA), 42 U.S.C. § 4332 *et. seq.*  and the Administrative

5    Procedures Act (APA), 5 U.S.C. § 701 *et seq.*  Plaintiffs assert that Defendants failed to

6    follow proper procedure in selecting Alternative C1.  Plaintiffs assert, *inter alia*, that this

7    project is a "major federal action" which will "significantly affect the quality of the human

8    environment;" as such, an EIS should be required.   In addition, Plaintiffs assert that

9    Defendants acted in violation of the APA because Defendants' selection of Alternative C1 was

10    "arbitrary" and "capricious," in part because Alternative D has less environmental

11    consequences.

12    **Summary Judgment Standard**

13    Summary judgment is proper "only if no genuine issues of material fact remain for trial

14    and the moving party is entitled to judgment as a matter of law." Block v. City of Los

15    Angeles, 253 F.3d 410, 416 (9th Cir. 2001).

16    **Scope of Review**

17    In this case, both parties have moved for summary judgment; the parties agree, and

18    the Court finds, that there is no genuine issue of material fact as to what the Defendants'

19    actions were:  the Forest Service created an EA, issued a Decision Notice and a Finding of No

20    Significant Impact, and designated Alternative C1 as the trail that best served the purpose of

21    the Arizona Trail.  Because NEPA is essentially a procedural statute, district court's review

22    of environmental impact statement is governed by Administrative Procedure Act (APA).

23    Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1356 (9th Cir. 1994). The

24    Ninth Circuit continued to say, "[t]he reviewing court[, however,] may not substitute its

25    judgment for that of the agency concerning the wisdom or prudence of a proposed action."

26    Id. (internal quotation omitted).  "[O]nce an agency has made a decision subject to NEPA's

27    procedural requirements, the only role for a court is to insure that the agency has considered

28    the environmental consequences; it cannot interject itself within the area of discretion of the

1   executive as to the choice of the action to be taken." <u>Strycker's Bay Neighborhood Council,</u>

2   <u>Inc. v. Karlen</u>, 444 U.S. 223, 227 (1980) (internal citation omitted).  The Supreme Court

3   added that a government agency, in selecting its course of action, is not required to elevate

4   environmental concerns over other appropriate considerations.  <u>Id.</u>  In reviewing an APA

5   case, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C.

6   § 706.   The Supreme Court stated, "[t]he task of the reviewing court is to apply the

7   appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the

8   record the agency presents to the reviewing court." <u>Florida Power & Light Co. v. Lorion</u>, 105

9   S.Ct. 1598, 1607 (1985).  The Court continued,

> [i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court ***is not generally empowered to conduct a de novo inquiry into the matter being reviewed*** and to reach its own conclusions based on such an inquiry.

14   <u>Id.</u> (emphasis added).  In the case at bar, the parties agree there is no genuine issue of

15   material fact.  Based on the above standard, the Court has no fact-finding function; the

16   cross-motions for summary judgment are ready for adjudication based on the record

17   presented to the Court.

18   **Applicable Law**

19       Under the Administrative Procedure Act, a court may overturn agency action if the

20   action was "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance

21   with law." 5 U.S.C. § 706(2)(A).  In determining whether an agency action was arbitrary

22   or capricious, the court "must ensure that the agency has taken a 'hard look' at the

23   environmental consequences of its proposed action." <u>Blue Mountains Biodiversity Project</u>

24   <u>v. Blackwood</u>, 161 F.3d 1208, 1211 (9th Cir. 1998) (internal citation omitted).  The Ninth

25   Circuit continued, "[u]nder this deferential standard, we must defer to an agency's decision

26   that is 'fully informed and well-considered.'" <u>Id.</u> (internal citation omitted).  However, the

27   Court need not forgive a clear error of judgment. <u>Id.</u> An agency's decision not to prepare

28   an EIS will be considered unreasonable if the agency fails to supply a convincing

statement of reasons why potential effects are insignificant.  Id.  NEPA is a procedural

statute intended to ensure environmentally informed decision-making by federal agencies.

Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1115 (9th Cir. 2002).  The Court

held "that NEPA does not mandate particular results, but simply provides the necessary

process to ensure that federal agencies take a hard look at the environmental consequences

of their actions."  Id. (internal quotations omitted).

Federal agencies may create an Environmental Assessment (EA) to "[b]riefly

provide sufficient evidence and analysis for determining whether to prepare an

environmental impact statement [EIS] or a finding of no significant impact [FONSI]."  40

C.F.R. § 1508.9.  The regulation further provides that an EA "[s]hall include brief[4]

discussions of the need for the proposal, of alternatives as required by sec. 102(2)(E), of

the environmental impacts of the proposed action and alternatives, and a listing of

agencies and persons consulted."  40 C.F.R. 1508.9.  An EIS is required, pursuant to 42

U.S.C. § 4332(C), if the action to be taken is a "major Federal action[] significantly

affecting the quality of the human environment."  42 U.S.C. § 4332(C).  If the EA leads to

a finding of no significant impact, the agency may proceed with its proposed action

without preparing an EIS.  A "Finding of No Significant Impact" is defined as "a

document by a Federal agency briefly presenting the reasons why an action . . . will not

have a significant effect on the human environment and for which an environmental

impact statement therefore will not be prepared."  40 C.F.R. § 1508.13.  The terms "major

federal action" and "significantly," as used in 42 U.S.C. § 4332(C), are defined in the

Code.  A "'[m]ajor Federal action' includes actions with effects that may be major and

which are potentially subject to Federal control and responsibility."  40 C.F.R. §1508.18.

"Major" reinforces but does not have a meaning independent of "significantly."  Id.  The

---

[4] It is noted that Plaintiffs' counsel left out the relevant word "brief" when quoting the statute in its original complaint (Dkt. 1, p. 6) and again in its Motion for Summary Judgment (Dkt. 24, p. 6).  Counsel should quote the entire sentence within the statute if there is any question as to a word's relevance.

word "significantly" as used in NEPA is defined under 40 C.F.R. § 1508.27.  It requires considerations of both "context" and "intensity."  Id.  The statute defines "significantly" as follows,

> (a) Context. This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), the affected region, the affected interests, and the locality. Significance varies with the setting of the proposed action. For instance, in the case of a site-specific action, significance would usually depend upon the effects in the locale rather than in the world as a whole. Both short- and long-term effects are relevant.
> (b) Intensity. This refers to the severity of impact. Responsible officials must bear in mind that more than one agency may make decisions about partial aspects of a major action. The following should be considered in evaluating intensity:
> (1) Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.
> (2) The degree to which the proposed action affects public health or safety.
> (3) Unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.
> (4) The degree to which the effects on the quality of the human environment are likely to be highly controversial.
> (5) The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks.
> (6) The degree to which the action may establish a precedent for future actions with significant effects or represents a decision in principle about a future consideration.
> (7) Whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts.
> (8) The degree to which the action may adversely affect districts, sites, highways, structures, or objects listed in or eligible for listing in the National Register of Historic Places or may cause loss or destruction of significant scientific, cultural, or historical resources.
> (9) The degree to which the action may adversely affect an endangered or threatened species or its habitat that has been determined to be critical under the Endangered Species Act of 1973.

1
2

(10) Whether the action threatens a violation of Federal, State, or local law
or requirements imposed for the protection of the environment.

3

4

5

6

7

8

9

10

11

Id.  The case <u>Blue Mountain Biodiversity Project v. Blackwood</u> is relevant to the case at
bar.  161 F.3d 1208 (9th Cir. 1998).  In that case, the Ninth Circuit stated that "[a]n EIS
must be prepared if 'substantial questions are raised as to whether a project . . . may cause
significant degradation of some human environmental factor.'"  <u>Id.</u> at 1212 (internal
citation omitted).  The Court relies on NEPA regulations, promulgated by the Council on
Environmental Quality, to guide its review of an agency's determination of significance.
<u>Id.</u>; <u>also see</u> 40 C.F.R. § 1508.27.  To determine whether a proposed project will have
'significant' impacts on the environment, an agency must evaluate the factors listed under
40 C.F.R. § 1508.27.  <u>Id.</u>

12

**<u>Discussion</u>**

13

14

15

16

17

Plaintiffs argue that the Defendants' actions violated the APA because they were
"arbitrary" and "capricious;" such actions must be set aside by a court.  Plaintiffs also
argue that the Defendants' proposed trail should be considered a "major Federal action"
that will "significantly affect[] the quality of the human environment;" such actions require
the creation of an EIS.  As to both arguments, the Court disagrees.

18

19

20

21

22

23

24

25

26

27

Plaintiffs argue that Defendants' proposed action is a "major Federal action[]
significantly affecting the quality of the human environment."  As stated, an EIS must be
prepared for such "major Federal actions."  42 U.S.C. §4332(C).  To determine if an action
"significantly" affects the environment, an agency or court must review the factors
delineated in 40 C.F.R. §1508.27.  The statute provides that "significantly" is a
combination of the "context" and "intensity" of the action.  <u>Id.</u>  To determine the
"intensity" of the action, the regulation provides ten factors to weigh.  The Plaintiffs assert,
in particular, that substantial questions exist as to the "intensity" factors set out in sections
1508.27(b)(2), (b)(4), (b)(5), (b)(7), (b)(8), (b)(9), (b)(10) with respect to the following:
Mexican spotted owls, elk, deer, northern goshawks, turkey, migratory birds, cultural

28

resources, sensitive species, noxious weeds, public health and safety (bears, mountain lions, enforcement of non-motorized restrictions, creation of social trails), riparian vegetation, "the naturalness of the San Francisco Peaks in general," enforcement of state laws prohibiting camping near water sources, historical resources, and threats of violations of other laws.  The Plaintiffs also claim that the Defendants' issuance of the EA was "arbitrary" and "capricious," as evidenced by the following: the selection of Alternative C1 over the less environmentally harmful Alternative D; the selection of Alternative C1 over Alternative D which provides an equally enjoyable recreational experience; and the conflicting evidence of the Biological Opinion, issued by the U.S. Fish and Wildlife, and the Environmental Assessment, issued by the Forest Service.  As such, Plaintiffs assert that the action must be overturned by this Court pursuant to 5 U.S.C. § 706.  The Court begins by addressing all Plaintiffs' arguments regarding the Mexican spotted owls.

**Mexican spotted owls (MSO)**

Plaintiffs claim that Defendants' finding of no significant impact was arbitrary and capricious.  As such, Plaintiffs assert, it should be overruled by this Court pursuant to 5 U.S.C. § 706.  Plaintiffs contend that the conclusions of the Biological Opinion (BO), and the findings of the Environmental Assessment (EA) that relied on the BO, are incompatible.  The Biological Opinion is a 25-page document that deals exclusively with the effect the Peaks Segment of the Arizona Trail will have on the MSO; it was written by the U.S. Fish and Wildlife Service at the request of Defendant Nora Rasure.  Plaintiffs correctly point out that the BO states that Alternative C1 will result in a "chronic disturbance" to the MSO.  In Plaintiffs' Motion for Summary Judgment, they state:

> The Biological Opinion prepared by the US Fish and Wildlife Service emphasizes that Altnerative C1 will result in a "chronic disturbance" to the MSO in three PACs [Protected Activity Centers], impacting the population for more than eight breeding seasons and thus likely to significantly affect the MSO population.

Plaintiffs' Memorandum, p. 11 (Dkt. 24, p. 11).  Plaintiffs continue to say, "[i]n the face of this conflicting evidence, the EA somehow ultimately concluded that Alternative C1

1
2
3

would not significantly affect MSO." <u>Id.</u>  Plaintiffs state, "The EA demonstrates that this conclusion was arbitrary, capricious, and not supported by the record." <u>Id.</u> at 10-11.  The pertinent part of the Biological Opinion reads as follows:

4
5
6
7
8
9
10

> We anticipate harm and harassment to MSO resulting in chronic disturbance from the cumulative effects of past and on-going recreation in these PACs coupled with the proposed action.  This will result in continued disturbance, which may result in disrupted MSO reproduction and the ability of these PACs to contribute to recovery of the species. . . .Existing information leads us to conclude that current levels of recreation are impacting MSO occupancy and reproductions within these PACs.  The addition of new trail and designating the Arizona Trail within these PACs is reasonably certain to increase the ongoing disturbance.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Biological Opinion, Administrative Record (A.R.) #77 at 18.  On that same page, under the heading, "Effect of the Take," the Biological Opinion concludes as follows: "In this biological opinion we determine that this level of anticipated take ***is not likely to result in jeopardy to the species***." <u>Id.</u> (emphasis added).  The Plaintiffs claim to not understand how the Forest Service, after analyzing the BO, arrived at the conclusion that no jeopardy would come to the MSO.  Plaintiffs' Memorandum, p. 11 (Dkt. 24, p. 11).  As stated above, the scope of review for this Court is not to ensure that the Forest Service arrived at the right result.  To reiterate the Ninth Circuit, "NEPA does not mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions." <u>Kootenai Tribe of Idaho</u>, 313 F.3d at 1115 (internal quotation omitted).  Here, the Defendants took the initiative to order the BO from the U.S. Fish and Wildlife Service.  Defendants then incorporated its findings and wrote a 48-page EA.  The Defendants took the necessary 'hard look' to satisfy NEPA; it cannot be said that Defendants acted "arbitrarily" with respect to its findings regarding the MSO.

26
27
28

The Plaintiffs assert that there is a lack of reliable information on the MSO.  Plaintiffs' Memorandum, pp. 17-18, (Dkt. 24, pp. 17-18).  This lack of reliable information, Plaintiffs claim, is a necessary factor under 40 C.F.R. §1508.27(b)(5) and

thus an EIS is required.  Section 1508.27 lists factors to determine which type of Federal actions "significantly" affect the environment. "Significantly" is sub-divided into the terms "context" and "intensity."  "Intensity" is broken down into ten factors.  The statute reads, "The following should be considered in evaluating intensity: . . .(5) The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks."  40 C.F.R. § 1509.27(b)(5).  Plaintiffs state that the lack of reliable information regarding the MSO precludes a finding of no significant impact.  Plaintiffs' Memorandum, p. 18 (Dkt. 24, p. 18).  The Plaintiffs state: "[d]ue to the lack of reliable, accurate data regarding the MSO population, the EA's conclusion that the MSO population will not be significantly affected by the project is inherently flawed."  Id.  (Dkt. 24, p. 18). The Plaintiffs, in the Memorandum's accompanying Statement of Facts, refer to the Biological Opinion.  The Plaintiffs assert in their Memorandum: "The Biological Opinion states that 'since there is no information regarding the owls' presence [in the Schultz Creek PAC] since 1993, we do not know how these owls have responded to recreational activities within the PAC.'" Plaintiff's Statement of Facts, ¶ 35 (Dkt. 25, p.8) (internal citation omitted) (brackets in original).  The BO, however, in the same paragraph, reads:

> The BAE states that designation of ***the Arizona Trail*** segment in the Schultz Creek PAC will increase hiking, moutain biking, and horseback riding within and adjacent to the PAC, but ***will reduce motorized use near the PAC (this segment will be designated non-motorized following designation of the Arizona Trail)***.  The Forest Service ***believes that the owls associated with this PAC have either habituated to the current recreation activity or have already moved due to human disturbance.*** However, since there is no information regarding the owls' presence since 1993, we do not know how these owls have responded to recreational activities within the PAC.

Biological Opinion, A.R. #77, p. 14 (emphasis added).   The BO, two pages later, concludes:

> "After reviewing the current status of the MSO, the environmental baseline for the action area, the effects of the action, and the cumulative effects, ***it is our biological opinion that construction and use of the Arizona Trail -***

1    ***Peaks Segment will not likely jeopardize the continued existence of the
2    MSO.***"

3    Id. at 16 (emphasis added).  An agency is not required to eliminate all scientific

4    uncertainty prior to making a FONSI.  Northwest Environmental Defense Center v. Wood,

5    947 F.Supp. 1371, 1385 (D. Oregon 1996), aff'd, 97 F.3d 1460 (9th Cir. 1996).  The BO

6    clearly concludes that the new trail would not likely jeopardize the MSO.  Furthermore,

7    Plaintiffs' argument only deals with section (b)(5) of 40 C.F.R. § 1508.27.  That is only

8    one of ten factors to be considered in evaluating the "intensity" of a Federal action; that

9    "intensity" is then combined with the "context" of the action, and that determines if the

10   action is "significant" or, put another way, "significantly affect[s] the quality of the human

11   environment" under 42 U.S.C. 4332(C).  The fact that an action may have "uncertainty"

12   does little, by itself, to make an action a major federal action requiring an EIS.

13          Plaintiffs continue to state that "uncertainties exist regarding activities within the

14   PAC [under 40 C.F.R. § 1509.27(b)(5)]."  Plaintiffs' Memorandum, p. 18 (Dkt. 24, p. 18).

15   Plaintiffs assert that the Forest Service underestimated the potential use of the trail; as

16   such, an EIS should be compiled to eliminate the uncertainty.  The BO states that "[i]t is

17   reasonable to expect that the designation of the trail as a segment of the Arizona Trail

18   system will make it a popular destination for recreation, which may result in much higher

19   use than the Forest Service is predicting."  Biological Opinion, A.R. #77, p. 12.  The

20   Plaintiffs contend that because the Forest Service may have underestimated the likely

21   actual use of the trail, there is enough uncertainty to require an EIS.  The U.S. Fish and

22   Wildlife Service operated under the assumption that the Forest Service may have

23   underestimated the use of the trail.  The BO nevertheless concludes that "construction and

24   use of the Arizona Trail - Peaks Segment will not likely jeopardize the continued existence

25   of the MSO."  Biological Opinion, A.R. #77, p. 16.  The fact that the BO incorporated the

26   possibility of miscalculations only reinforces the reliability of its conclusion.  Further, as

27   stated above, mere "uncertainties" are not enough to require an EIS.  First, the regulation

28   uses the language, "highly uncertain," which is more than just "uncertain."  Second, this is

1   only one of ten factors to be considered to determine an action's intensity; the "intensity,"

2   combined with the "context," determines if the action "significantly affect[s] the quality of

3   the human environment," requiring an EIS. 40 C.F.R. 1509.27, 42 U.S.C. § 4332(C).

4   Here, not only is there no evidence that the effects of the trail are "highly uncertain,"

5   uncertainty alone is not enough to warrant an EIS.

6       The Plaintiffs claim that because the trail will run through MSO restricted habitat,

7   and because of the lack of data on the MSO, an EIS is required.  Plaintiffs correctly point

8   out that "[t]he BO also states that 'trail designation will occur through MSO restricted

9   habitat.'" Plaintiffs' Memorandum, p. 18. (Dkt. 24, p. 18).  The Plaintiffs continue: "The

10  BO raises the concern that 'this action may render this habitat less suitable for MSO.  This

11  may result from an increased frequency and duration of use by recreationists which may

12  cause MSO to flee, modify behavior, and/or select different habitats.'" Id.  (Dkt. 24, p. 18).

13  The full paragraph in the Biological Opinion reads,

14          Trail designation will occur through MSO restricted habitat; ***however, no
            key habitat components (snags, Gambel oak, large trees, large coarse***

15          ***woody debris) will be modified or lost.  The Forest Service states that
            designating 12.2 miles of existing trail will not alter habitat.***  However, as

16          stated above, the increase in use due to designating the Arizona Trail may
            result in many more people accessing this trail segment. ***Though physical***

17          ***habitat modification from this action may be minimal,*** there is the
            potential that this action may render this habitat as less suitable for MSO.

18          This may result from an increased frequency and duration of use by
            recreationists which may cuase MSO to flee modify behavior, and/or select

19          different habitats.

20

21

22  Biological Opinion, A.R. #77, p. 14 (emphasis added).  The BO, two pages later,

23  concludes that the trail "will not likely jeopardize the continued existence of the MSO."

24  Biological Opinion, A.R. #77, p. 16.  Plaintiffs' assertion that this "uncertainty" demands

25  the creation of an EIS, is unconvincing .

26      In sum, with respect to the Mexican spotted owl, the Defendants, by requesting the

27  creation of a BO from the U.S. Fish and Wildlife Service, by relying, in part, on the 25-

28  page BO to create the 48-page EA, by issuing an eleven-page Decision Notice that

1   included redundant analysis, by issuing a nine-page Decision of Appeal, and by

2   maintaining numerous contacts with the U.S. Fish and Wildlife Service and the Arizona

3   Game and Fish Department, met their procedural burden before selecting Alternative C1

4   as the designated trail.

5           **Cultural Resources**

6           Plaintiffs contend that the selection of Alternative C1 will damage the area's natural

7   cultural resources.  The Code provides the factors to determine if an action will

8   "significantly" affect the environment.  40 C.F.R. § 1508.27 Significance is measured by

9   both "Context" and "Intensity."  40 C.F.R. § 1508.27(a), (b).  "Intensity" is determined by

10  weighing ten factors, one of which is "[t]he degree to which the effects on the quality of

11  the human environment are likely to be highly controversial."  40 C.F.R. § 1508.27(b)(4).

12  The Plaintiffs charge that the destruction of natural resources are likely to be "highly

13  controversial;" as such, the action, based on its "Intensity" and "Context" is one that will

14  "significantly affect[] the human environment" under 42 U.S.C. § 4332(C).  Therefore,

15  Plaintiffs argue, an EIS should be required.  The Plaintiffs' Memorandum indicates, "[t]he

16  FONSI fails to acknowledge the significance of this Traditional Cultural Property to

17  numerous and geographically diverse Native American tribes."  Plaintiffs' Memorandum,

18  p. 14 (Dkt. 24, p. 14).  Plaintiffs continue, "At least thirteen Native American tribes in both

19  Arizona and New Mexico consider this area to be religiously significant."  Id.  (Dkt. 24, p.

20  14).  Plaintiffs conclude, "Given the cultural significance of the Arizona Trail project area

21  to each of the above-mentioned Native American tribes, it is difficult to understand how

22  the Forest Supervisor could reasonably conclude that the project does not have 'region-

23  wide', 'statewide', or even 'national' importance."  Id.  (Dkt. 24, p. 14).  The Forest Service

24  contacted the following tribes before creating the Environmental Assessment:  the Hopi

25  Tribe, Haulapai Tribe, Havasupai Tribe, Dine' Medicine Man's Association, Fort

26  McDowell Yavapai Nation, Navajo Nation, Pueblo of Acoma, Pueblo of Zuni, San Carlos

27  Apache Tribe, San Juan Southern Paiute Tribe, Tonto Apache Tribe, Yavapai-Apache

28  Nation, Yavapai-Prescott Tribe, and the White Mountain Apache Tribe.  Environmental

Assessment, A.R. #83, p.50.  Despite the regular contact with the above Native American tribes, none of the tribes administratively appealed the Environmental Assessment or the Decision Notice.  None of the tribes have joined this lawsuit.  In so far as the Native Americans are concerned, this action is not "highly controversial."  Moreover, even if it is considered "highly controversial," that would be only one of ten factors the court considers to determine an action's "intensity."  The "intensity" is then evaluated with the "context" of the action, 40 C.F.R. § 1508.27; and that determines if the action "significantly affect[s] the quality of the human environment" requiring an EIS, 42 U.S.C. § 4332(C).  Therefore, even if this were "highly controversial" to the Native Americans, that alone does not mandate that an EIS be created.  The Ninth Circuit stated that "'controversial' is a substantial dispute [about] the size, nature, or effect of the major Federal action rather than the existence of opposition to a use."  Blue Mountain Biodiversity Project, 161 F.3d at 1212 (internal quotation omitted) (brackets in original).  For Plaintiffs to show that this action is "highly controversial," they need to show more than a mere opposition to a use; and Plaintiffs have had difficulty showing that.

Plaintiffs state that the EA "raised substantial questions regarding the controversial nature of the project's impact upon cultural resources."  Plaintiff's Memorandum, p. 19 (Dkt. 24, p. 19).  The Plaintiffs continue, "Of particular cultural and historical significance within the [Traditional Cultural Property] is the area known as Little Springs.  Little Springs is a unique cultural resource that . . . historically, was the base camp for C. Hart Merriam who developed a description of life zones that is commonly used today.  Little Springs is also biologically important . . ."  Id.  The only citation Plaintiffs provide for these assertions is to the EA itself.  The EA reads,

> Cultural values – The Little Springs area has historical and cultural values. The spring was the base camp for C. Hart Merriam who developed a description of life zones that is commonly used today.  The springs are part of the larger traditional cultural property as identified by local Native American tribes and springs in general hold high cultural value.  Currently, the spring site is in moderate to good condition.  Generally there are plants holding soil in place, the spring is running into its natural drainage, and

1
2
3

> litter is not prevalent.  One social trail leading into the Little Spring area is
> poorly located and causing erosion because of its steep grade.  This social
> trail and others will be obliterated in Alternatives A and C.  Roads have
> been closed by other projects to discourage motorized use in the area.

4
5
6
7
8
9
10
11
12
13

Environmental Assessment, A.R. #83, p. 26.  The EA concludes that Alternative C1 is the

best alternative for the Arizona Trail.  As stated above, NEPA does not mandate particular

results, but only requires that the Federal agency analyze the problem and meet the

minimum procedural requirements.  Kootenai Tribe of Idaho, 313 F.3d at 1115.  Also, the

Administrative Procedures Act only requires the Court to overturn agency action when it

is arbitrary, capricious, or not in accordance with law. 5 U.S.C. § 706.  This standard is

highly deferential to the agency's discretion.  Strycker's Bay Neighborhood Council, Inc.,

444 U.S. at 227.  With respect to the Defendants' assessment of cultural resources, it

cannot be said that the EA was arbitrary or capricious; nor cannot it be said that the action

is so "highly controversial" that an EIS is required.

14

**Remaining Issues**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Plaintiffs continue at great length alleging that "substantial questions" exist as

to the possible effects to all of the previously listed animal and plant species as well as

other environmental resources.  Plaintiffs claim that because the selection of Alternative

C1 was not supported by sufficient analysis, it was arbitrary and capricious.  Plaintiffs

claim that the action is a major Federal action that "significantly" affects the human

environment, where "significantly" is determined by its "context" and "intensity," and

where "intensity" is determined by the ten listed factors.   The Court will not restate the

approximately 84 pages of description and analysis contained in the Biological Opinion,

the Environmental Assessment, the Decision Notice, the Finding of No Significant Impact,

and Appeal Decision.  It is sufficient to say that the Court has considered every single

argument proffered by the Plaintiffs.  Nothing presented by the Plaintiffs, however,

requires that this Court set aside the Defendants' actions because they were arbitrary or

capricious; nothing presented by the Plaintiffs demonstrates that the creation of a 24-inch,

15-mile dirt trail is a "major Federal action[] significantly affecting the quality of the

human environment," thus requiring an EIS.  The Defendants actions conformed to the procedural requirements of NEPA. Accordingly,

**IT IS ORDERED DENYING** Plaintiffs' Motion for Summary Judgment. (Dkt. 24).

**IT IS FURTHER ORDERED GRANTING** Defendants' Cross-Motion for Summary Judgment. (Dkt. 32).

DATED this 26th day of September, 2005.

Earl H. Carroll
United States District Judge